**SIGNED this 16th day of October, 2008.**

*Craig A. Gargotta*

_____
**CRAIG A. GARGOTTA**
**UNITED STATES BANKRUPTCY JUDGE**

_____

## UNITED STATES BANKRUPTCY COURT
## WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LINDA MARIE DODSON, | § | CASE NO. 06-11952-CAG |
| | § | |
| Debtor. | § | Chapter 13 |

--------------------------------------------------------------------------------

| | | |
|---|---|---|
| LINDA MARIE DODSON, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | ADV. NO. 07-1013 |
| | § | |
| WILL E. PERKINS and WILL P., INC., | § | |
| | § | |
| Defendants. | § | |

### MEMORANDUM OPINION

On July 30, 2008, came on for trial the above-styled and numbered adversary proceeding.

The Plaintiff ("Dodson") and the Defendant Will E. Perkins ("Perkins") appeared in person and

through counsel, and the Defendant Will P., Inc., (the "Corporation") appeared through Perkins, its

principal, and through counsel.  The Court heard the arguments of counsel and considered the

evidence presented, including but not limited to Dodson's and Perkins's testimony, and at the

conclusion of the trial took the matter under advisement.  The following constitute the Court's findings of fact and conclusions of law under Federal Rule of Bankruptcy Procedure 7052, in support of its Judgment entered contemporaneously herewith.

BACKGROUND

This case involves the interpretation and application of certain Texas statutes that govern the rights and duties of parties to a contract for deed involving property in Texas.  Certain of the background facts as stated in the parties' pre-trial orders are not disputed, and other facts were established at trial, as follows:

1.     On September 15, 1997, Dodson and Charles Kruger, then her boyfriend, as purchasers and Perkins as seller entered into a contract for deed (the "Original Contract") with respect to certain real property located in Bastrop County, Texas, commonly known as 129 Crenshaw Lane, Bastrop, Texas (the "Property").  The Property at the time the Original Contract was executed was unimproved; Dodson thereafter moved her manufactured home onto the site and made it her residence.

2.     On or about June 28, 1999, a subsequent contract for deed covering the Property, virtually identical to the Original Contract except that it named only Dodson as purchaser, was executed (the "Second Contract," referred to generally herein, with the Original Contract, as the "Contract" or the "Contracts").  Perkins does not recall executing the Second Contract, but did not establish at trial that the signature of the Seller on it was not his.

3.     The purchase price of the Property under each of the two Contracts was $25,000, with a $500 down payment.

4.     On or about February 3, 2003, the Property was conveyed by Perkins to Will P., Inc.

2

## THE PARTIES' ARGUMENTS

The Plaintiff alleges that the Defendants failed to provide her with certain annual statements required under § 5.077 of the Texas Property Code to be provided to the purchaser by the seller under a contract for deed.  While the parties agree that § 5.077 governs this case, there may be an issue as to which version of that provision applies.

Conveyances by contract for deed are regulated by statute in Texas, and a brief history of that regulation may be helpful:

> In 1995, the Legislature amended chapter 5 of the Texas Property Code to address serious abuses in the acquisition of homes in the colonias. . . . The colonias are substandard, generally impoverished, rural subdivisions that typically lack basic utilities and other infrastructure. . . . Concentrated along the Texas border with Mexico, colonia residents almost always acquire residential lots through executory contracts called "contracts for deed" or "contracts for sale.". . . [I]n this type of contractual conveyance, legal title to the property does not transfer until after all purchase payments have been made, unlike a traditional mortgage in which legal title transfers upon closing the transaction. . . .
>
> The Legislature found that purchasers had little legal protection under the contract-for-deed financing arrangement and no statutory right to critical information about the colonia property being purchased. . . . Sellers have sold individual lots to two or more purchasers, sold lots without written contracts, and placed liens on lots subsequent to the sale without informing the purchasers and colonia residents. . . . Colonia residents also complain that sellers frequently misrepresent the availability of water, sewer service, and other utilities, and that the residents are often not informed when property being sold lies in a flood plain or is otherwise unsuitable for habitation. . . .
>
> Although the Legislature considered a prohibition of contract-for-deed conveyances to end these abuses, it determined that many residents building homes in these areas need this method of financing because they do not have access to traditional mortgage financing. . . . The contract-for-deed arrangement, however, allows low-income persons to purchase property and build homes on the property.

*Flores v. Millennium Interests, Ltd.*, 185 S.W.3d 427, 434-35 (Tex. 2005) (Wainwright, J., concurring).

Thus, the predecessor to § 5.077, Texas Property Code § 5.100 (1995), that was in effect when the parties in this case signed the Original Contract, applied only to certain counties where the

colonias were located.  The parties agree that it was not in effect in Bastrop County and so never applied to the Contracts in this case.

"[T]he Legislature amended the statute in 2001, substantially increasing the monetary penalties and applying the protections statewide."  *Flores*, 185 S.W.3d at 435 (Wainwright, J., concurring).  Section § 5.077 in the amended version (the "2001 Statute") provided:

### § 5.077. Annual Accounting Statement

(a)  The seller shall provide the purchaser with an annual statement in January of each year for the term of the executory contract. If the seller mails the statement to the purchaser, the statement must be postmarked not later than January 31.

(b)  The statement must include the following information:
    (1)  the amount paid under the contract;
    (2)  the remaining amount owed under the contract;
    (3)  the number of payments remaining under the contract;
    (4)  the amounts paid to taxing authorities on the purchaser's behalf if collected by the seller;
    (5)  the amounts paid to insure the property on the purchaser's behalf if collected by the seller;
    (6)  if the property has been damaged and the seller has received insurance proceeds, an accounting of the proceeds applied to the property; and
    (7)  if the seller has changed insurance coverage, a legible copy of the current policy, binder, or other evidence that satisfies the requirements of Section 5.070(a)(2).

(c)  A seller who fails to comply with Subsection (a) is liable to the purchaser for:
    (1)  liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement; and
    (2)  reasonable attorney's fees.

The 2001 Statute had a savings clause that provided that

[t]he change in law made by Subsection (c), Section 5.077 . . . applies only to a violation that occurs on or after September 1, 2001.  A violation that occurs before September 1, 2001, is covered by the law in effect when the violation occurred, and the former law is continued in effect for that purpose.

Act of May 18, 2001, 77th Leg., R.S., ch. 693, § 3(h), 2001 Tex. Gen. Laws 1319, 1328. Thus, at the time the annual statements on the Contracts were due in 2002, 2003, 2004 and 2005, the 2001 Statute was in effect and applicable to those violations.

Effective as of September 1, 2005, the Texas Legislature again amended the statute, revising § 5.077(c) and adding a new subsection (d), providing:

> (c)    A seller who conducts less than two transactions in a 12-month period under this section who fails to comply with Subsection (a) is liable to the purchaser for:
>> (1)    liquidated damages in the amount of $100 for each annual statement the seller fails to provide to the purchaser within the time required by Subsection (a); and
>> (2)    reasonable attorney's fees.
>
> (d)    A seller who conducts two or more transactions in a 12-month period under this section who fails to comply with Subsection (a) is liable to the purchaser for:
>> (1)    liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement, but not to exceed the fair market value of the property; and
>> (2)    reasonable attorney's fees.

The Defendants claim that all of the violations alleged in this suit, including those that occurred as far back as 2002, are governed by the 2005 Statute. They cite as authority a Texas Attorney General's Opinion dated March 27, 2006, which provided that the 2005 Statute applied to every violation of the statute that occurs between September 1, 2001, and August 31, 2005, as well as those on or after its effective date.

At trial the Plaintiff did not dispute that contention but merely posited that, under the facts as she alleged them, it makes no difference whether the 2001 Statute or the 2005 Statute applies. In particular, the Plaintiff argues that because the Defendants "conduct[ed] two or more transactions in a 12-month period under . . . section [5.077]," the applicable penalty is $250/day under either the 2001 Statute or the 2005 Statute. However, counsel for Dodson at trial phrased her request for

damages as limited to a request for delivery of the deed to the Property and a cancellation of what remains owing under the Contract.

The Defendants respond to the Plaintiff's allegations regarding the applicable penalty with two alternative arguments. First, they dispute that either of them conducted two or more transactions within any of the relevant twelve-month periods, which they assert are the year before and the year after either the date the alleged violation occurred or the date the suit was brought.[1] The Defendants cite no authority for this interpretation of the "twelve-month period" language of the 2005 Statute and the Court can find none.

Second, the Defendants argue that, regardless of which penalty ($100/missing statement or $250/day/missing statement) applies facially, the applicable Statute is unconstitutional under the U.S. and Texas Constitutions as an ex post facto law and as imposing an excessive fine that is impermissible absent proof of actual damages. The Defendants contend that, because the Plaintiff has not pled nor proven that she suffered actual damages as a result of the alleged violations, this Court cannot constitutionally impose the statutory penalty. The Defendants base this argument on *Henderson v. Love*, 181 S.W.3d 810 (Tex. App.–Texarkana 2005, no pet.) and the application of Chapter 41 of the Texas Civil Practice & Remedies Code.

The Plaintiff denies that she must establish actual damages to be entitled to an award of the liquidated damages provided under the 2005 Statute, citing an earlier Texas Supreme Court case, *Flores v. Millenium Interests, Ltd.*, 185 S.W.3d 427 (Tex. 2005), and arguing that the Supreme Court's denial of rehearing in that case should be interpreted as a rejection of *Henderson v. Love*.

---

[1] Counsel for Defendants actually argued that the applicable time period was the year before and the year after the Plaintiff "sought to enforce the statute," which suggests the date when a demand was made or the suit was filed. Because this Court declines to adopt the interpretation of the applicable twelve-month period that the Defendants urge, it need not choose between those two "anchor" dates.

In the alternative the Plaintiff claims that she in fact pled for and suffered actual damages in the form of severe emotional distress, the loss of $2500 she tendered in settlement of this action, and/or her attorneys fees in this case.

The Court will address the parties' arguments in the order presented above.

## ANALYSIS AND DISCUSSION

### The Applicable Law

First, the Court agrees that the 2005 Statute applies in this case to all alleged violations. *Heigel v. McComas*, 2007 WL 2823687 (Tex. App.–Eastland Sep 27, 2007 , pet. denied); *accord,* Op. Tex. Att'y Gen. No. GA-0418, 31 Tex. Reg. 3329-30 (2006); *but see* **Henderson v. Love**, 181S.W.3d 810, 814 n.4 (Tex. App.– Texarkana 2005, no pet.) (noting in *dicta* that the 2005 amendment to § 5.077 "does not contain any language that would make it retroactive in nature, and the enacting language likewise does not address its retroactivity" and so applying it to violations alleged to have incurred after 2002 and before 2005).

### The Violations

Dodson alleges that the Defendants failed to provide her with the annual statements required under § 5.077. She testified to that effect. On the other hand, Perkins testified that he gave her a copy of an amortization schedule, a copy of which was introduced as Defendants' Exhibit 1, at the time the Original Contract was signed. He also claimed to have given her a copy of the same document in April of 2002, and to have given Kruger two copies–one in "late 2002" and one in June of 2003 to give to Dodson. Perkins' daughter, Donna Spellman, corroborated his testimony with respect to the delivery of the copy in June of 2003. Kim Stewart, Dodson's neighbor and another party to a contract for deed with Perkins, also testified that she had a conversation with Dodson in

2000 or 2001, in which Stewart was made to understand from comments by Dodson that the latter had received a copy of the amortization schedule.  Dodson disputed that.

The Court finds that whether or not Dodson actually received the copies of Defendants' Exhibit 1 is not material.  That is because, the Court finds, the amortization schedule does not satisfy § 5.077's requirement that an "annual statement" be sent to the purchaser.

The Defendants cite *Flores* in support of their argument that the copies Perkins provided were sufficient because they need only have substantially complied with the requirements of § 5.077(b), which lists the information that the annual statements provided must contain.  It is true that the Texas Supreme Court in *Flores* held that a statement which provided only the interest paid during the preceding year and an escrow analysis, but which did not provide the "amount paid under the contract" and "the number of payments remaining under the contract," was not "deficient or otherwise invoke the liquidated damages provision of section 5.077(c)." *Flores*, 185 S.W.3d at 429, 430.

However, the Supreme Court placed a limitation on its ruling, providing that "an annual statement that omits some of the information required by Section 5.077(b) does not invoke 'liquidated damages' under Section 5.077(c) *unless the statement is so deficient as to be something other than a good faith attempt by the seller to inform the purchaser of the current status of their contractual relationship.*"  ***Id.*** at 434 (emphasis added).  That limitation is critical in this case, because the document that Perkins allegedly provided copies of did not show the *current* status of the Contract.  Rather, it was merely an amortization schedule that showed what *would have been* paid and owed at certain times, assuming: (1) all payments had been timely made, (2) all payments had been made in the exact amounts due, (3) all payments made were credited properly, and (4) no

other charges were incurred. Buyers having to rely on such assumptions[2] is exactly what the Statute was intended to avoid. Section 5.077 was meant to replace the uncertainty buyers face as to whether those assumptions are accurate for the previous year, with objective information based on the actual historical facts of what has transpired for that period. The amortization schedule Perkins claims he provided does not satisfy the purpose of the statutory requirement–to make the buyer aware, at frequent and specified intervals during the term of the contract, of any discrepancy between what they believe they paid and owe, and what the seller believes they paid and owe. Clearly, Defendants' Exhibit 1 could not have accomplished that. For one thing, because all the copies Perkins says he provided were identical to the one he says he provided when the Original Contract was signed, by definition those copies could not have reflected the *current* status of the Contract at the time they were allegedly provided.[3] The copies provided no more information than Dodson would have had at the signing of the Original Contract. If such copies would satisfy § 5.077, the requirement that *annual* statements be provided would be meaningless.

The Court therefore finds that the Defendants failed to comply with § 5.077. In particular, given the transfer of the Property and the Contracts to the Corporation on February 3, 2003, the Court finds that Perkins individually failed to comply with the Statute by providing an annual statement by January 31, 2002, for the year 2001, and by January 31, 2003, for the year 2002.

---

[2] The Defendants argue that Dodson's ability to use the information on the amortization schedule to calculate what was owed and how many payments remained meant the amortization schedule was sufficient. For a buyer to make those calculations and reach a "correct" result, however, requires him or her to make the assumptions described above and requires that those assumptions be correct–which may or may not be true.

[3] For example, the Contracts provided for late charges with interest thereon which, if incurred, could not be calculated from the information provided in the amortization schedule. Plaintiff's Exhs. 1 and 2; Defendants' Exh. 1.

Thereafter, the Court finds, it was the Corporation that violated the obligation to provide annual statements to Dodson.

There was testimony at trial that Dodson stopped making payments under the Contract sometime in 2003, and an argument was made by the Defendants that their obligation to continue to provide the statements ceased with that default.  Under the express language of both the 2001 Statute and the 2005 Statute, the Defendants' obligation to provide annual statements extends for the entire term of the Contract.  Tex. Prop. Code Ann. § 5.077(a) (2001) ("The seller shall provide the purchaser with an annual statement in January of each year for the term of the executory contract."); Tex. Prop. Code Ann. § 5.077(a) (2005) (same).  While a copy of a "Notice to Cure Default" was attached to the Plaintiff's Complaint, neither it nor any other evidence was offered at trial to show that either of the Defendants has ever made demand or terminated the Contract.  Rather, the Court takes judicial notice that on March 27, 2007, it confirmed Dodson's Chapter 13 plan under which the Contract was assumed.[4]  The Court therefore finds that the Contract continues in effect, and so finds that the Corporation failed to comply with its obligation to provide annual statements due January 31 of each of 2005, 2006, 2007 and 2008.[5]

---

[4] While the Defendants filed a motion to reconsider that confirmation, they have not alleged as a basis for reconsideration that the Contract was terminated and no longer executory. That motion to reconsider remains pending in the case, presumably because of the untimely death of the Defendants' prior counsel.

[5] Whether or not the Contract has been terminated does not affect the amount of the judgment in this case in any event.  That is because, as discussed below, although the Court finds that the applicable penalty is $250/day/statement, it also finds that those damages are capped under the 2005 Statute at the value of the Property.  The damages that accrued after the initial violation of the Statute on January 31, 2002, at that rate of $250/day would have equaled the value of the Property (which the Court finds below to be $20,000) after only 80 days. Accordingly, the questions of whether the Contract terminated sometime later, and how long damages should be considered to have accrued thereafter, have at most only theoretical significance.

Under Texas law exemplary damages such as § 5.077 may only be imposed individually and not jointly and severally as the Plaintiff requests.   Tex. Civ. Prac. & Rem. Code Ann. § 41.006 (1995) ("In any action in which there are two or more defendants, an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant."); Op. Tex. Att'y Gen. No. GA-0418, 31 Tex. Reg. 3329-30 (2006) (finding the liquidated damages provisions of the 2005 Statute should be considered as imposing a penalty), based on *Flores v.  Millenium Interests, Ltd.*, 185 S.W.3d 427 (Tex. 2005) (finding that § 5.077 under the 2001 Statute was penal in nature); *see also* *Henderson v. Love*, 181 S.W.3d 810 (Tex. App.–Texarkana 2005, no pet.) (finding that § 5.077 under the 2001 Statute was a penalty for purposes of deciding its constitutionality).   Thus, any liability for liquidated damages under § 5.077(d) of the 2005 Statute for statements due by January 31, 2002, and by January 31, 2003, that accrue from those dates until the date of judgment, should be Perkins' liability individually, and any liability under  § 5.077(d) of the 2005 Statute for statements not provided for the years 2003, 2004, 2005, 2006, and 2007, from January 31st of the following year, respectively, until date of judgment, should be the Corporation's liability.[6]

---

[6] With respect to a corporation, exemplary damages "are warranted only when the act is that of the corporation rather than the act of its 'ordinary servants or agents.'" *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 391 (Tex. 1997).  Exemplary damages can properly be awarded against a corporation because of an act by an agent only if the court finds one of the following: (1) the principal authorized the doing and the manner of the act; (2) the agent was unfit and the principal was reckless in employing him; (3) the agent was employed in a managerial capacity and was acting in the scope of employment; or (4) the employer or a manager of the employer ratified or approved the act.  *Id.*  The Court finds the Corporation's liability for liquidated damages to be proper in light of the role of Perkins, its agent, as its sole shareholder and principal.

## The Applicable Penalty Provision

As stated above, the 2005 Statute differentiates between the penalty applicable to a "seller who conducts less than two transactions in a 12-month period under this section who fails to comply" and a "seller who conducts two or more transactions in a 12-month period under this section who fails to comply."  The former is liable to the buyer for "liquidated damages in the amount of $100 for each annual statement the seller fails to provide to the purchaser within the time required" while the latter is liable to the buyer for "liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement, but not to exceed the fair market value of the property."  Thus, the Court must determine whether Perkins conducted more than one contract for deed sale "in a 12-month period," and to do so, must determine what the applicable twelve-month period is.

As mentioned above, the parties did not direct the Court to, nor was the Court itself able to locate, any case law or other authority, nor any legislative history, that would clarify the meaning of the 2005 Statute in this respect.  The Court therefore focuses on the general intent behind the law when it was originally adopted in 1995, and when the substantial $250/day penalty was first added in 2001.  It is undisputed that, as discussed above, the purpose of both was to address "fraudulent and abusive conduct" in contract for deed conveyances in which "purchasers had little legal protection . . . and no statutory right to critical information about the . . . property being purchased."  *Flores*, 185 S.W.3d at 435 (Wainwright, J., concurring).  Protection of the buyer is thus clearly the focus of the legislation.  The penalty provisions of the 2001 Statute implement that intent by imposing on the seller substantial penalties for failure to comply with numerous and detailed notice and other requirements.  By distinguishing in the 2005 Statute between a seller in only one transaction a year and a seller who engages in more than one transaction a year, the Texas

12

Legislature recognized that the occasional and sometimes equally unsophisticated seller would be unfairly burdened by the onerous requirements of the law and that the penalty should reflect that legislative concern.

Considered within this context, the Defendants' suggested interpretation of the 2005 Statute's penalty provisions makes little sense. They urge a construction that would make the twelve-month period one that surrounds the violation of the Statute, or that surrounds the enforcement of the Statute. Such a construction could easily lead to frequent variations in the penalty applicable to a single contract over what is often a lengthy term, as the penalty would change depending on increases or decreases in the number of other contracts for deed being executed by the seller at different points in time–events that are not within the control of, nor even the knowledge of, the buyer. Calculation of the total amount of the penalties owed on a single contract when no annual statements are sent for a protracted time would require knowledge of the entire history of the seller's transactions over that period. Such a complicated formula would increase the buyer's cost of litigating violations and would effectively hinder the buyer's ability to enforce the Statute without judicial action, as is contemplated by the Statute. *See* Tex. Prop. Code Ann. § 5.084 (2008) ("If a seller is liable to a purchaser under this subchapter, the purchaser, without taking judicial action, may deduct the amount owed to the purchaser by the seller from any amounts owed to the seller by the purchaser under the terms of an executory contract.").

On the other hand, interpreting the twelve-month period to be "anchored" to the signing of the contract being enforced provides a much simpler formula for calculating penalties and therefore makes the Statute both easier to comply with and to enforce. The penalty applicable to the subject contract for its entire term can be determined with certainty at the time it is signed, which

13

encourages consistent compliance. The Court therefore adopts this as the meaning of subsections (c) and (d) of the 2005 Statute.

Both the Original Contract and the Second Contract were effective as of September 15, 1997. Plaintiff's Exhs. 1 and 2. Dodson alleged in her Complaint, and the Defendants admitted in their Answer and did not dispute at trial, that Perkins had entered into more than two other contracts for deed within a twelve-month period that includes September 15, 1997: a contract with Ward Hilyer on or about March 16, 1997; a contract with Melchor and Moraemia Mendoza on or about May 30, 1997; a contract with Jack A, and Doris Ringlaben on or about June 26, 1997; and a contract with Kim Stewart on or about January 23, 1998. Accordingly, this Court finds that Perkins was a "seller who conducts two or more transactions in a 12-month period under this section" and that, therefore, the penalty applicable to Perkins on statements due prior to the transfer of the Property and the Contract in February of 2003, and to the Corporation after that transfer, is $250 per day per annual statement, not to exceed the value of the Property.

<u>Whether Liquidated Damages May Be Recovered in the Absence of Actual Damages</u>

The Texas Supreme Court in *Flores* clearly holds that § 5.077 itself does not require proof of actual damages. *Flores*, 185 S.W.3d at 434. The Defendants point out, however, that in making that decision, the Supreme Court did not address whether an actual damages requirement in Chapter 41 of the Texas Civil Practice & Remedies Code must be applied to § 5.077's penalty provisions in order to preserve their constitutionality. The Defendants also point out that, after the *Flores* opinion, the Court of Appeals in *Henderson v. Love* decided that constitutional issue in the positive. *See Henderson v. Love*, 181 S.W.3d at 815, 817 (holding that Tex. Civ. Prac. & Rem. § 41.004(a), which provides in pertinent part that "exemplary damages may be awarded only if damages other than nominal damages are awarded," is applicable to § 5.077).

14

In particular, the Defendants argue that, for § 5.077 to survive challenges under the U.S. and Texas Constitutions, the provision must be interpreted as requiring a plaintiff to prove he or she suffered more than nominal actual damages before the "liquidated damages" of § 5.077 may be awarded.  *See* ***Henderson v. Love***, 181 S.W.3d at 815, 817.  In this case, the Defendants contend, Dodson has failed to prove she has suffered any actual damages from the Defendants' failure to send annual statements and, therefore, cannot recover the liquidated damages of $250/day/statement specified by the 2005 Statute.

Specifically, Defendants in their Second Amended Answer and their Proposed Pretrial Order have raised the affirmative defenses of the unconstitutionality of § 5.077's liquidated damages provisions under the following sections of Article I of the Texas Constitution: § 13 (excessive fines[7]), § 17 (taking of property without adequate compensation[8]) and § 19 (due process[9]).  In addition, they have challenged the provision under the following Amendments to the United States Constitution: the Fifth Amendment[10], the Eighth Amendment[11] and the Fourteenth Amendment.[12]

---

[7] **§ 13. Excessive bail or fines; cruel and unusual punishment; remedy by due course of law.**  Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law.

[8] **§ 17. Taking, damaging or destroying property for public use; special privileges and immunities; control of privileges and franchises.**  No person's property shall be taken, damaged or destroyed for or applied to public use without adequate compensation being made, unless by the consent of such person; and, when taken, except for the use of the State, such compensation shall be first made, or secured by a deposit of money; and no irrevocable or uncontrollable grant of special privileges or immunities, shall be made; but all privileges and franchises granted by the Legislature, or created under its authority shall be subject to the control thereof.

[9] **§ 19. Deprivation of life, liberty, etc.; due course of law.**  No citizen of this State shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land.

[10] **Amendment V. Grand Jury Indictment for Capital Crimes; Double Jeopardy; Self-Incrimination; Due Process of Law; Just Compensation for Property.**  No person shall

15

However, the Defendants did not brief or argue any of these constitutional bases at trial except to the extent they cited *Henderson v. Love*. The Court of Appeals in that case, however, addressed the constitutionality of § 5.077 only under Article I, § 16 of the Texas Constitution (as an impermissible ex post facto law impairing a contract[13]) and Article I, § 13 of the Texas Constitution (as imposing an unconstitutionally excessive fine). Therefore, and because the Defendants did not rely at all on § 16, they have waived all bases for their claim the provision is unconstitutional other than § 13 of of Article I of the Texas Constitution prohibiting excessive fines.

With respect to that argument, however, *Henderson v. Love* is distinguishable from this case because the Court of Appeals there construed the 2001 Statute.[14] As discussed above, this Court

---

be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

[11] **Amendment VIII. Excessive Bail, Fines, Punishments.** Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

[12] **Amendment XIV. Citizenship; Privileges and Immunities; Due Process; Equal Protection; Appointment of Representation; Disqualification of Officers; Public Debt; Enforcement.**
**Section 1.** All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

[13] **§ 16. Bills of attainder; ex post facto or retroactive laws; impairing obligation of contracts.** No bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made.

[14] The *Henderson v. Love* Court applied the 2001 Statute to violations occurring between September 1, 2001, and August 31, 2005. *Henderson v. Love*, 181 S.W.3d at 814 n.4. Whether it or the 2005 Statute applied, however, does not appear to have been raised as an issue in the case, presumably because the 2005 Statute become effective only six days before the case was

finds that the 2005 Statute governs in this case.  Section 5.077(c) under the 2001 Statute provided

for unlimited liquidated damages calculable at $250 per day per missing statement, *ad infinitum*.

On the other hand, liquidated damages under § 5.077(c) and (d) under the 2005 Statute are limited

to either $100 per statement not provided or they are capped at the "fair market value of the

property."  The difference is critical to the issue before this Court.  The Court of Appeals in

***Henderson v. Love*** found that § 5.077 under the 2001 Statute was constitutionally suspect as

imposing an excessive fine, because

> there is no relation between the so-called "liquidated damages" of Section 5.077 and
> any actual damages–which are not required under Section 5.077.  Also, it is difficult
> to see any relation between the offense–failing to provide an annual financial
> report–and the potential liability under Section 5.077 as it was before the 2005
> amendments.

***Henderson v. Love***, 181 S.W.3d at 816.  Thus, the provisions that the ***Henderson v. Love*** Court

found defective are those that the 2005 amendment of § 5.077 later directly addressed, and

materially changed.

The standard applicable to constitutional challenges under Texas law was articulated by the

Texas Supreme Court in ***Smith v. Davis***, 426 S.W.2d 827, 831 (Tex. 1968):

> In passing upon the constitutionality of a statute, we begin with a presumption of
> validity. It is to be presumed that the Legislature has not acted unreasonably or
> arbitrarily; and a mere difference of opinion, where reasonable minds could differ,
> is not a sufficient basis for striking down legislation as arbitrary or unreasonable. The
> wisdom or expediency of the law is the Legislature's prerogative, not ours. As quoted
> in this Court's opinion in ***Texas National Guard Armory Board v. McCraw***, 132
> Tex. 613, 126 S.W.2d 627 at 634 (1939), "There is a strong presumption that a
> Legislature understands and correctly appreciates the needs of its own people, that
> its laws are directed to problems made manifest by experience, and that its
> discriminations are based upon adequate grounds."

---

submitted (and three months before it was decided).

Further, the burden rests upon the individual who challenges the act to establish its unconstitutionality.  *Robinson v. Hill*, 507 S.W.2d 521, 524 (Tex. 1974).

This Court holds that the Defendants have failed to meet their burden of proof in this case as to the alleged unconstitutionality of § 5.077(d) of the 2005 Statute.  Specifically, the Court finds that the cap in that provision limits the damages that can be awarded thereunder to an amount that is reasonably related to the offense and to any actual damages that could be expected to be incurred from a violation of the 2005 Statute.  The Court therefore finds that the 2005 Statute is not constitutionally suspect and so the Court need not apply Chapter 41 of the Texas Civil Practice & Remedies Code, and its requirement that actual damages be proven, to § 5.077.[15]

Even if the Court were to have found the 2005 Statute to be constitutionally suspect as imposing an excessive fine,  *Henderson v. Love* still would not support the application of Chapter 41 of the Texas Civil Practice & Remedies Code and its requirement of proof of actual damages to the 2005 Statute. In order to find the 2001 Statute to be constitutional, the **Henderson v. Love** Court

---

[15] The Court notes in passing that as a result of this ruling, it need not decide the effect of the Defendants' failure to give proper notice of their challenge to the constitutionality of the 2005 Statute. Specifically, Federal Rule of Civil Procedure 5.1 requires that "a party that files a pleading . . . drawing into question the constitutionality of a . . . state statute must promptly . . . file a notice of constitutional question stating the question and identifying the paper that raises it, [and] serve the notice and paper . . . on the state attorney general . . . either by certified or registered mail or by sending it to an electronic address designated by the attorney general for this purpose."  Such attorney general is then provided the opportunity to defend the statute. Similarly, the Texas statute that requires joinder of persons affected by a request for declaratory relief has been interpreted as requiring notice to the Texas Attorney General of suits challenging the constitutionality of a statute.  *See e.g., In re Ross*, 672 S.W.2d 315, 317 (Tex. App.–Eastland [11th Dist.]1984, writ ref'd n.r.e.) (applying Tex. Rev. Civ. Stat. art. 2524-1, § 11 (1981, repealed 1985, now Tex. Civ. Prac. & Rem. Code Ann. § 37.006 (1985)), and holding that "[t]he Attorney General must be served with a copy of the proceedings, and is entitled to be heard when a litigant alleges and seeks a declaration that a statute is unconstitutional"), *cert. denied sub nom* **Holmes v. Ross**, 470 U.S. 1084 (1985); **Commissioners Court of Harris County v. Peoples Nat. Utility Co.**, 538 S.W.2d 228 (Tex. Civ. App.–Houston [14th Dist.] 1976, writ ref'd n.r.e.) (same).   There is no evidence that the Defendants in this case filed or served any notice on the Texas Attorney General.

18

considered it as limited by the operation of Chapter 41 of the Texas Civil Practice & Remedies Code and, in particular, by § 41.004(a), which provides that "exemplary damages may be awarded only if damages other than nominal damages are awarded," and § 41.008(b), which provides that "[e]xemplary damages awarded against a defendant may not exceed an amount equal to the greater of . . . (1)(A) two times the amount of economic damages; plus (B) an amount equal to any noneconomic damages found by the jury, not to exceed $750,000; or (2) $200,000." The ***Henderson v. Love*** Court found that those limitations in the Civil Practice & Remedies Code effectively cured the unlimited liquidated damages provision of § 5.007 under the 2001 Statute that would otherwise have been unconstitutionally excessive and penal.

However, under its express terms Chapter 41 of the Texas Civil Practice & Remedies Code does *not* apply where the statute that is sued on limits the amount of exemplary damages that may be awarded to an amount that would be less than the limits established under Chapter 41. Specifically, § 41.002(b) of the Texas Civil Practice & Remedies Code provides:

> This chapter establishes the maximum damages that may be awarded in an action subject to this chapter, including an action for which damages are awarded under another law of this state. This chapter does not apply to the extent another law establishes a lower maximum amount of damages for a particular claim.

The maximum allowable amount of Dodson's exemplary damages under § 41.008(b), if it applied, would be $200,000. There was no evidence presented at trial to show that any economic damages[16] were suffered by Dodson.[17] The evidence regarding her alleged noneconomic

---

[16] Defined under Tex. Civ. Prac. & Rem. Code Ann. § 41.001(4) as "compensatory damages intended to compensate a claimant for actual economic or pecuniary loss; the term does not include exemplary damages or noneconomic damages."

[17] The Court specifically finds that the evidence regarding Dodson's tender of $2500 pursuant to an unconsummated settlement of this matter was insufficient to show that (1) she ever made demand for return of the funds, or that (2) she was not still the equitable owner of the funds and that they would not ultimately be returned to her, especially considering the Court's direction to Defendants' current counsel that the funds be located and returned to Dodson. The

damages[18]–the emotional distress she allegedly suffered and the pain and suffering from her Bells Palsy–was too vague and inconclusive and speculative to permit the Court to quantify and award any such damages. *See e.g.*, **Lehmann v. Wieghat**, 917 S.W.2d 379, 384 (Tex. App.–Houston [14th Dist.] 1996, writ denied) (upholding jury's award of no damages for pain and suffering where "the evidence of appellant's injuries was purely subjective in that it consisted of his testimony about being depressed, losing weight, loss of sleep, and crying when he thinks of the accident [and h]e had no medical treatment or medical expense for any of these symptoms").

In contrast, the sum total of the evidence offered at trial on the fair market value of the Property, which the Court has found is the applicable cap under § 5.077(d), was that the price under the Original Contract and the Second Contract, both effective as of September, 1997, was $25,000. However, the Court takes judicial notice that the Debtor listed, under penalty of perjury, on her Schedule A - Real Property, the Property at a value of $20,000 as of December 1, 2006, the date her bankruptcy case was filed.[19] Because the date of the valuation on her Schedule A is closer to the time of the trial than the date the Contracts became effective, and because the Debtor is judicially estopped to deny such value, the Court finds that the value of the Property for purposes of the cap in § 5.077(d) is $20,000. *See generally,* **Browning Mfg. v. Mims (In re Coastal Plains, Inc.)**, 179

---

Court therefore finds the evidence insufficient to prove those damages. No other evidence of actual pecuniary loss by Dodson was offered.

[18] Defined under Tex. Civ. Prac. & Rem. Code Ann. § 41.001(12) as "damages awarded for the purpose of compensating a claimant for physical pain and suffering, mental or emotional pain or anguish, loss of consortium, disfigurement, physical impairment, loss of companionship and society, inconvenience, loss of enjoyment of life, injury to reputation, and all other nonpecuniary losses of any kind other than exemplary damages."

[19] She also represented on Schedule A that the "2006 Bastrop CAD appraisal" of the Property was $13,958. That reference to the property tax appraisal is, however, unsubstantiated hearsay and so the Court declines to base its finding on value on it.

F.3d 197 (1999) (finding a debtor's failure to schedule an asset to be a basis for judicial estoppel), *cert. denied sub nom* **Mims v. Browning Mfg.**, 528 U.S. 1117 (2000).

Accordingly, even if this Court it were to find § 5.077(d) to be constitutionally suspect, Chapter 41 of the Texas Civil Practice & Remedies Code would not apply because, the Court would find, that section's cap on liquidated damages establishes a lower maximum amount of damages ($20,000) for the particular claim that is the subject of this case, than the limit ($200,000) established by Chapter 41. According to the plain language of § 41.002(b), therefore, Chapter 41 would not apply and § 41.004(a)'s requirement that more than nominal compensatory damages be proven to permit the award of exemplary damages, therefore, would not apply in this case.

## THE AMOUNT OF THE JUDGMENT

Based on the foregoing, the Court finds and concludes that each Defendant has violated § 5.077 and therefore is liable to the Plaintiff for liquidated damages under § 5.077(d). However, those damages are expressly limited to the value of the Property. The Court finds that the amount of liquidated damages for which each Defendant would be liable under the $250/day/statement formula in § 5.077(d) exceeds the value of the Property, which the Court has found and concluded is $20,000.[20] Although under Texas Civil Practice & Remedies Code § 41.006, joint and several liability is not generally permitted for exemplary damages, the Court finds that the 2005 Statute

---

[20] Specifically, Defendant Will E. Perkins would be liable for liquidated damages in the amount of $250 per day from February 1, 2002, to and including January 31, 2003, plus $500 per day from February 1, 2003, to and including January 31, 2004, plus $750 per day from February 1, 2004, to and including the date of entry of judgment in this case. Defendant Will P., Inc. would be liable to the Plaintiff for liquidated damages in the amount of $250 per day from February 1, 2005, to and including January 31, 2006, plus $500 per day from February 1, 2006, to and including January 31, 2007, plus $750 per day from February 1, 2007, to and including January 31, 2008, plus $1000 per day from February 1, 2008, to and including the date of entry of judgment in this case. The amounts so calculated far exceed $20,000 for each Defendant.

expressly limits Plaintiff's recovery to $20,000 maximum, from all sources.  The Court therefore interprets the Statute as requiring such limited joint and several liability in this case.

Although there has been no counterclaim by the Corporation in this adversary proceeding to liquidate and collect the amount owed under the Contracts, the Plaintiff's request for a judgment awarding her title to the Property requires the Court to consider that issue to a limited extent. Specifically, the Court finds that the Plaintiff remains liable for the balance of what is owed under the Contracts (subject to her right under Texas Property Code § 5.084 to offset the amount owed to her, as established herein).  The Court takes judicial notice that Defendants filed a proof of claim in the amount of $39,381.69 in Dodson's Chapter 13 bankruptcy case, to which she has not objected. The claim therefore is presumed valid.  Fed.R.Bankr.P. 3001(f) ("A proof of claim executed and filed in accordance with these rules shall constitute prima facie evidence of the validity and amount of the claim.").  This Court declines to decide the amount of the claim with specificity at this time because it was not expressly at issue in the adversary proceeding.  However, the Court does find that, at this time and for the limited purpose of deciding the Plaintiff's right in this proceeding to an award of title to the Property, the Defendants' claim exceeds the amount of Plaintiff's recovery from the Defendants.  The Court therefore denies the Plaintiff's request that she be awarded title to the Property or that the Defendants deliver to her a deed to the Property, unless and until the remaining amount she owes under the Contracts is paid.[21]

# # #

---

[21] Such payment may include any offset available to Dodson under § 5.084, as discussed above.