**IT IS HEREBY ADJUDGED and DECREED that the below described is SO ORDERED.**

**Dated: December 22, 2008**

_____
CRAIG A. GARGOTTA
UNITED STATES BANKRUPTCY JUDGE

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| LINDA MARIE DODSON, | § | CASE NO. 06-11952-CAG |
| | § | |
| Debtor. | § | Chapter 13 |
| --- | --- | --- |
| LINDA MARIE DODSON, | § | |
| | § | |
| Plaintiff | § | |
| | § | |
| v. | § | ADV. NO. 07-1013 |
| | § | |
| WILL E. PERKINS and WILL P., INC., | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM OPINION IN SUPPORT OF ORDER
GRANTING PLAINTIFF'S MOTION FOR ATTORNEYS FEES**

Came on to be considered the Motion of the Plaintiff, Linda Marie Dodson, for Attorney Fees (Dkt. No. 88) and the Response (Dkt. No 90) of the Defendants, Will E. Perkins and Will P., Inc., thereto. The Motion was filed under Fed.R.Bankr.P. 7054, because the Plaintiff had prevailed in the above-numbered adversary proceeding. For the reasons stated herein, the Court will grant

Plaintiff's Motion and award Dodson $56,600.64 for the attorneys and expenses of C. Daniel Roberts & Associates, P.C., and $22,648.87 for the attorneys fees and expenses of Michael V. Baumer.

## BACKGROUND

Dodson was represented by two attorneys in this matter–C. Daniel Roberts and Michael V. Baumer. Roberts was the first attorney retained by Dodson on this matter, advising her that Will Perkins's failure to provide her with annual accounting statements regarding her contract for deed gave rise to a claim under § 5.077 of the Texas Property Code. Dodson retained Roberts to file suit in state court and/or to resolve the matter through settlement negotiations and mediation.

When Dodson was forced to file bankruptcy to protect her automobile from repossession, Roberts referred the matter to Michael V. Baumer, who has both consumer bankruptcy experience and litigation experience. Baumer undertook Dodson's representation both in her Chapter 13 bankruptcy case and in this litigation.

Based on the pendency of Dodson's Chapter 13 bankruptcy case, Baumer removed the state court suit to this Court. He reviewed the matter with Roberts and prepared the case for trial. With the removal, Perkins also engaged new counsel with bankruptcy experience to represent him in this case.

The Court held trial on June 25, 2008, and then took the matter under advisement. The Court then rendered a decision on October 16, 2008, in favor of Dodson, awarding her a judgment against Defendants, jointly and severally, in the amount of $20,000.00 (which she might setoff against her indebtedness to one or both of the Defendants under the contract for deed). *See* Memorandum Opinion, Dkt. No. 80, and Judgment, Dkt. No.81. Pursuant to Fed.R.Bankr.P. 7054(a) (incorporating Fed.R.Civ.P. 54(d)(2)) and Local Rule 7054, the Court's judgment also expressly

reserved Dodson's right under § 5.077 to seek an award of attorney fees from Defendants as additional damages. Specifically, § 5.077(d) provides that

> [a] seller who conducts two or more transactions in a 12-month period under this section who fails to comply with Subsection (a) is liable to the purchaser for . . . liquidated damages in the amount of $250 a day for each day after January 31 that the seller fails to provide the purchaser with the statement, but not to exceed the fair market value of the property; and . . . reasonable attorney's fees.

Dodson filed the instant Motion (Dkt. No. 88), in accordance with Rule 7054 and Local Rule 7054, to recover her "reasonable attorney's fees" under § 5.077(d). Defendants filed a Response (Dkt. No. 90) to it. A hearing was held on December 3, 2008, after which the Court took the matter under advisement.

Dodson in her Motion for Attorney Fees simply recites the amounts she incurred as attorney fees and expenses and attaches the supporting time records and list of expenses. First, she requests a total of $56,600.64 with respect to the charges of C. Dan Roberts & Associates, P.C.:$50,286.00 in attorney fees plus $6,314.64 in expenses. Roberts charged $295.00/hour and personally performed about 40 percent of the attorney work involved, and utilized associates billing between $180.00/hour and $225.00/hour for the remaining legal work. Additionally, a portion of the firm's fees includes paralegal time at $95.00/hour.

Dodson also requests $22,648.87 for Baumer's charges: $22,185.00 in attorney fees plus $463.87 in expenses. Baumer charged $300.00/hour and his legal assistants were charged at $100/hour.

Thus, the total amount Dodson seeks for fees and expenses is $79,245.51. It should be noted that, in comparison to that figure, under the Court's Judgment the Plaintiff's recovery for other liquidated damages was limited to value of the subject property, which the Court found to be $20,000.00.

3

Defendants' Response to the Motion for Attorney Fees raises a number of objections. In general, they maintain that the total amount of fees requested should have some reasonable relation to the potential size of the recovery in general, and that Dodson (i.e., her attorneys) should have anticipated that any recovery would be limited and so should have limited the time spent on the matter to an amount more reasonable in comparison to that recovery.

As to Roberts's fees, Defendants argue that an hourly billing rate of $295.00/hour for work performed in years 2004 - 2006 is excessive, and that reasonable rates for that time frame would be $150.00/hour for Roberts and $125.00/hour for his associates. Defendants also contend that on a number of occasions two attorneys made court appearances or attended mediation when one attorney would have sufficed. Finally, Defendants also object to Roberts's charges for Westlaw in the amount of $2,641.85.

As to Baumer's fees, the Defendants argue first that the amount is unreasonable and that the majority of his fees were not spent on the trial itself but in preparation for trial. Defendants maintain that most of Baumer's time was unnecessary because Roberts had already been working the case for years. The Defendants essentially argue that Dodson unnecessarily increased the cost of the litigation by filing the bankruptcy case and removing the state court suit to this Court.

Second, Defendants argue that Baumer's billing rate of $300.00/hour is excessive and that a customary rate for such representation should be roughly $175.00/hour. Finally, Defendants identify specific charges by Baumer that Defendants believe are excessive.

At the hearing on the Motion for Attorney Fees, each counsel proffered his own testimony in support of, or opposition to, the fee request. Roberts stated that his hourly fee for this type of work at the time Dodson engaged him was in fact $325.00/hour but that he had discounted his fee to $295.00/hour. He testified that he was board-certified in real estate law and in business and

4

consumer bankruptcy law, and that he has over twenty years of experience. The Court is also aware that Roberts has been a panel Chapter 7 trustee for many years.

Roberts noted that five attorneys[1] have represented the Defendants during the course of this litigation. During the course of his own representation, Roberts testified that Perkins had engaged three successive attorneys to represent him and his corporation. As a result, Roberts testified, he was forced to revisit the facts, issues, merits, and past and current settlement proposals numerous times, with each substitution of counsel. According to Roberts's testimony, Perkins had agreed to mediate the matter several times but either failed to participate in the mediation or to honor agreements reached as a result of mediation. Such conduct, and Perkins's "eleventh-hour" transfer of the Dodson contract to Will P., Inc., requiring the late addition of the corporation as a defendant in the case, greatly increased Roberts work and fees in the case, according to his testimony.

Roberts pointed out that when suit was filed the applicable statute, § 5.077 of the Texas Property Code, provided for liquidated damages in the amount of $100.00 per day, but also noted that during the course of litigation the daily penalty increased to $250.00, capped at the value of the subject property. Roberts acknowledged that he may not have been aware of the Texas Attorney General Opinion advising that that amendment of the statute had retroactive effect so that it applied to the transactions that were the subject of this suit.

Finally, Roberts concluded by noting that there is a dearth of case law regarding § 5.077 and its application, and argued that he had already adjusted his fee request down in light of the novelty of the litigation.

Baumer argued in support of his request by suggesting that this Court follow the *Johnson* factors in *Johnson v. Georgia Hwy. Express, Inc.*, 488 F.2d 714, 717-18 (5th Cir. 1974), in

---

[1] One of Defendants' counsel, Gray Jolink, unexpectedly passed away in June of 2008. Jolink had been brought in to represent the Defendants when Dodson filed bankruptcy. After his death, Leediker took over the representation of Defendants.

5

determining the reasonableness of his request.[2] In doing so, he used the rubric of the ***Johnson*** factors in support of his fees, arguing that they are reasonable given that: (1) there is little case law regarding § 5.077 of the Texas Property Code; (2) his representation was essentially on a contingent fee basis because Dodson did not have the funds to pay him should she have lost; (3) the results obtained were that she won; and (4) the fees should not be limited in relation to the other damages recovered because that would effectively be imposing a cap on the fees where the statute's cap on damages expressly does not extend to attorney fees. Moreover, Baumer noted that much of the fees incurred were attributable to Defendants' conduct and unwillingness to honor any mediation agreement or to settle the case.

Defendants' counsel, Kent Leediker, testified in opposition to the Motion for Attorney Fees. Leediker practices in Travis County doing primarily family and probate work for which he charges $150-$225 per hour. He also practices in federal court providing tax services and has in the past practiced in bankruptcy court. Leediker did not challenge the skills or abilities of Plaintiff's lawyers; rather he argued that the litigation at issue was non-bankruptcy and did not require bankruptcy expertise or the fees those lawyers normally charged in bankruptcy matters. He testified that he had visited with a number of state court practitioners who provide real estate and/or commercial services and they all suggested that a fee of $150-$200 per hour would be representative of the work necessary in representing Dodson. This fact Leediker claimed is

---

[2] These factors include: (1) time and labor involved; (2) novelty and difficulty of issues; (3) skill required to perform the legal services properly; (4) preclusion of other employment; (5) customary fees; (6) whether the fee is fixed or contingent; (7) time limitations imposed by clients or circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of the attorneys; (10) undesirability of the case: (11) nature and length of the professional relationship with the client; and award in similar cases. *Accord,* ***In re First Colonial Corp. of America***, 544 F.2d 1291 (5th Cir.), *cert. denied*, 431 U.S. 904 (1977). The factors applicable under Texas law, discussed below, are similar if not identical.

supported by the fact that the Defendants themselves hired lawyers with rates much less than Plaintiff's attorneys'.

Finally, Leediker urged the Court to compare the amount of the fees sought with the amount of the judgment awarded, asserting that Plaintiff's lawyers could have, and should have, adjusted their representation to the potential amount of recovery.

## DISCUSSION AND ANALYSIS

As was the case regarding the underlying merits of this litigation, both parties recognized that there is little case law discussing what are "reasonable attorney's fees" under § 5.077 (d)(2). The statute offers no further guidance as to what should be considered in determining reasonable attorney's fees and does not provide any guidance on the relationship, if any, between the amount of recovery for liquidated damages awarded and the amount of reasonable attorney's fees that may be awarded.

Dodson's attorneys first argued that this Court should evaluate the award of attorney's fees under the Bankruptcy Code and its applicable provisions, most notably §§ 327-330. Defendants countered that the Court should evaluate the award of attorney's fees under state law, utilizing the analysis provided by the Texas Supreme Court in *Arthur Anderson & Co. v. Perry Equip. Corp*., 945 S.W.2d 812 (Tex. 1997).

This Court agrees with Defendants that because this is a suit under state law and not bankruptcy law, attorney fee awards should be analyzed in accordance with state law. Further, the Court notes that the fees sought in this case are not be paid by the bankruptcy estate, but by Defendants. Accordingly, the Court will look to Texas law to determine the reasonableness of fees.[3]

---

[3] The Court notes, however, that the factors to be considered under that law appear to be similar, if not identical, to those applicable to fee awards made in bankruptcy cases.

7

*Arthur Anderson* was a suit involving violations of the Deceptive Trade Practice Act (the "DTPA") and causes of action rooted in fraud, negligence, misrepresentation and breach of implied warranty that all related to an audit that Arthur Anderson & Co. had provided Perry Equipment Company. At issue was whether a percentage of recovery method is the proper measure of reasonable attorney's fees under the DTPA. *Id.* at 814. In particular, the question in *Arthur Anderson* issue was whether the plaintiff was entitled to attorney's fees based upon a contingency fee basis without resort to proving the reasonableness of the fees. In contrast, in the matter before this Court the fees sought are nominally based upon an hourly rate for the work performed. However, both Plaintiff's lawyers stated that had Dodson lost, they would have not sought recovery for their fees from he given her inability to pay, and to that extent this case is similar to *Arthur Anderson*.

The Texas Supreme Court found that, in evaluating the reasonableness of fees, the following eight factors should be considered by the factfinder:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;

(2) the likelihood . . . that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the legality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

8

*Id.* at 818 (citations omitted). In the case at bar, the Court makes the following findings in light of the *Arthur Anderson* factors.

(1) Time and Labor Involved; Novelty and Difficulty of the Questions; Skill Required. The Court finds that the time expended on the matter by both of Dodson's lawyers was in significant part a by-product of Perkins's intransigence in settling or mediating the matter to conclusion and his changing lawyers on several occasions. Perkins's conduct delayed resolution of the case and required Dodson's lawyers to revisit discovery and settlement options with each new counsel.

Also, as noted in this Court's Memorandum Opinion, there was little case law or other guidance regarding § 5.077's application. Cases of first impression generally present a variety of legal issues to decide, which in turn more attorney time spent on legal analysis including research, and more "flexibility" in counsel's approach to the litigation (e.g., developing several alternative strategies to be used depending on exactly how the issues are framed).

(2) Likelihood of Preclusion of Other Employment. Any time a lawyer is retained to handle a matter over a period of years or bring a case through trial (and now through its appeal), the lawyer's ability to take on other matters is constrained. Counsel did not argue, and the Court does not find, that this is a significant factor in this case.

(3) Fee Customarily Charged for Similar Services. There is, however, a substantial issue as to what the customary rate is for legal services similar to those provided in this case. Defendants' counsel suggested that the Plaintiff's rates in this case are roughly two times those customarily charged in this area. The Court finds, however, that it was provided no evidence or legal authority on what the customary fee for contract for deed litigation in fact is (or was, at the time this litigation was commenced). Roberts, at his $295/hour rate, was clearly experienced and qualified in state court real estate litigation; Baumer, with his $300/hour rate, was clearly experienced and well-qualified as a litigator in bankruptcy court. The Court finds that Dodson's engagement of Roberts

at his stated rate, and her substitution, after her bankruptcy case was filed, of Baumer at his rate, was reasonable.[4]

(4) Amount Involved. It is true that the amount involved in the litigation–the potential recovery– was limited to the value of the property. The Court was provided virtually no evidence on that value, other than Dodson's admission on her bankruptcy Schedule, and so was constrained to finding that value of $20,000. The fees requested are nearly four times that–i.e., four times the amount of the damages. While that comparison may appear on its face to be grossly out of proportion, Dodson's counsel correctly noted that the length of the litigation (and so the amount of fees requested) was dictated in part by Defendants' decision not to settle and the difficulty in bringing the case to trial. Moreover, once a matter is filed, and settlement is not an option, a plaintiff has little choice in prosecuting the action but to expend the time necessary to try it.

In addition, there is a compelling countervailing consideration in this case that weighs in favor of not reducing the fees even in light of the relatively small recovery. As discussed in detail in the Court's Memorandum Opinion, the Texas Legislature enacted § 5.077 as a deterrent to deceptive practices in contract for deed transactions. In doing so, it imposed significant consequences for failure to comply with the statute, and those consequences include the payment of attorneys fees *in addition to* other liquidated damages. Plaintiffs' ability to recover their actual costs of bringing suit, including their attorneys fees, is clearly material to the enforcement, and thus the efficacy, of the statute. Without *full* compensation for the costs of that enforcement, the Legislature's intent to deter those deceptive practices would be defeated.

---

[4] As an aside, the Court notes when the matter was removed to bankruptcy court, like the Plaintiff Defendants felt compelled to hire a lawyer who had experience in bankruptcy court.

(5) Time Limitations Imposed by Client. There do not appear to have been any significant time limitations in this matter, other than the amount of time the matter took. The Court does find that this case did take an inordinate amount of time to bring to conclusion.

(6) Nature and Length of Relationship with the Client. Both of Plaintiff's counsel had protracted legal relationships with the client–the relationship with Dodson went on for four years.

(7) Experience, Reputation, and Ability of Counsel. Defendant's counsel did not dispute the experience, reputation or ability of Plaintiff's lawyers other than to note that lawyers of lesser caliber (with lower rates) could have represented Dodson.

(8) Whether the Fee Is Fixed or Contingent; the Uncertainty of Collection. The Court finds that, because the lawyers took this matter on what in reality was a contingency basis and there was substantial uncertainty in the nature of the litigation and the results obtained, the Plaintiff was not required to retain lawyers with lower fee requirements. Had Dodson not prevailed, her counsel would not have been compensated at all for their services, given her inability to pay.

Finally, Defendants' counsel challenged the reasonableness of three specific kinds of charges by Roberts. First, Defendants objected to the charges for Westlaw in the absence of a corresponding charge for the attorney time involved in that online research. Roberts adequately explained this "discrepancy" by stating that he simply did not include the attorney time for use of Westlaw but rather billed only the expense of the Westlaw charges themselves. Second, Defendant's counsel argued that Roberts charged his time at his full rate while travelling. Roberts explained that he only charged at his full rate during travel when he could not also work while en route. In this instance, the rate is warranted given that Roberts could not have worked while driving to state district court. Finally, Defendant's counsel objected to two attorneys attending hearings and mediation while one attorney should have been sufficient. While there may sometimes be merit to this objection, Roberts adequately justified the charges by explaining that by bringing an associate to court and mediation

he was able to save time he would have otherwise spent educating his associates about the litigation and mediation so that the associate could attend alone. The Court notes that his use of an associate at hearings and mediations was limited and therefore will not deduct any fees for that reason.

## CONCLUSION

Applying the *Arthur Anderson* factors, the Court finds and concludes that the attorneys fees and expenses that Dodson requests are reasonable and should be allowed in total. Applying each factor individually and collectively, the Court finds that the evidence supports such an award. Therefore, the Court will enter an Order granting her Motion for Attorney Fees and awarding her $56,600.64 for the attorneys and expenses of C. Daniel Roberts & Associates, P.C., and $22,648.87 for the attorneys fees and expenses of Michael V. Baumer.[5]

# # #

---

[5] Such fees and expenses are awarded to Dodson *for the benefit of* C. Daniel Roberts and Michael V. Baumer, and as a consequence of the fiduciary capacity in which she is awarded them, they may only be collected from the Defendants and may not be included in any offset by Dodson against her liability to Defendant Will P., Inc.